## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                      No. CR 11-2149 JB

JESUS IVAN OCHOA-ARRIETA,

        Defendants.

## AMENDED MEMORANDUM OPINION AND ORDER[1]

**THIS MATTER** comes before the Court on the Defendant's Sentencing Memorandum and Motion for a Downward Departure and/or a Variance, filed January 12, 2012 (Doc. 23)("Sentencing Memorandum"). The Court held a sentencing hearing on January 25, 2012. The primary issues are: (i) whether the Court should depart downward on Defendant Jesus Ivan Ochoa-Arrieta's sentence based upon his cultural assimilation; and (ii) whether the Court should vary downward on Ochoa-Arrieta's sentence based upon the 18 U.S.C. § 3553(a) factors. The Court will grant in part and deny in part the requests in the Sentencing Memorandum. The Court will depart downward based on Ochoa-Arrieta's cultural assimilation and will vary downward, although not to the time-served sentence that Ochoa-Arrieta requests. The Court will sentence Ochoa-Arrieta to 13-months imprisonment

## FACTUAL BACKGROUND

Ochoa-Arrieta was born on June 8, 1986, in Delicias, Chihuahua, Mexico. See Presentence

---

[1]The Court files this Amended Memorandum Opinion and Order to correct an error. On page 9 of the Memorandum Opinion and Order, filed April 20, 2012 (Doc. 30), the Court incorrectly stated that the Plea Agreement stipulated to an offense level of 20. Page 9 now reflects the correct stipulated offense level of 12.

Investigation Report ¶ 29, at 7 (disclosed November 22, 2011)("PSR").  Ochoa-Arrieta left Delicias at the age of 3, when his family moved to Guymon, Oklahoma.  See PSR ¶ 30, at 8.  His mother, stepfather, and half-brother continue to live in Guymon.  See PSR ¶ 29, at 8.  His half-sister lives in Austin, Texas.  See PSR ¶ 29, at 8.  In 2006, Ochoa-Arrieta married Kayla Martin -- a United States citizen -- and they have two children, who are also United States citizens.  See PSR ¶ 32, at 8.

On June 15, 2011, United States Border Patrol agents performing sign cutting duties near Columbus, New Mexico discovered footprints.  See PSR ¶ 4, at 2.  The agents spotted a group of individuals on New Mexico Highway 9 at mile marker 85 and, upon questioning, each individual admitted to being a citizen of Mexico, illegally present in the United States.  See PSR ¶ 4, at 2.  One of the individuals was later identified as Ochoa-Arrieta.  See PSR ¶ 4, at 2.  A records-check revealed that Ochoa-Arrieta had been convicted of knowingly concealing stolen property on May 27, 2005 in Oklahoma, and, after serving ninety days, was deported on May 8, 2007.  See PSR ¶ 5, at 2.  When his family visited him in Mexico, after his 2007 deportation, Ochoa-Arrieta reported that they heard gunshots at a gas station at which they stopped and later saw the bodies of three people who had been killed.  See PSR ¶ 33, at 9.  Ochoa-Arrieta informed the USPO that he returned to the United States because his children were asking for him.  See PSR ¶ 33, at 8.

## PROCEDURAL BACKGROUND

On October 11, 2011, Ochoa-Arrieta pled guilty to the Indictment, filed August 9, 2011 (Doc. 11), charging a violation of 8 U.S.C. § 1326(a) and (b), that being Re-entry of a Removed Alien.  See Non-Standard Fast Track Plea Agreement ¶ 3, at 2, filed October 11, 2011 (Doc. 18)("Plea Agreement").  Pursuant to rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the parties agreed that Ochoa-Arrieta is entitled to a reduction of 2 offense levels under U.S.S.G.

§ 3E1.1(a), and, if applicable, a reduction of an additional offense level under U.S.S.G. § 3E1.1(b). See Plea Agreement ¶ 6(a), at 2.  The parties also agreed that, pursuant to the United States Attorney's fast-track program and U.S.S.G. § 5K3.1, Ochoa-Arrieta is entitled to a reduction of one offense level for his waiver of appellate rights.  See Plea Agreement ¶ 6(b), at 2.  The Plea Agreement is contingent on Ochoa-Arrieta's agreement that he will not collaterally attack or contest his prior deportation/removal order.  See Plea Agreement ¶ 11(c), 5.  Ochoa-Arrieta agreed to waive his rights to appeal the conviction or any sentence within the advisory guideline range as determined by the Court.  See Plea Agreement ¶ 12, at 5.  Apart from those stipulations, the parties reserved their rights to assert any position or argument with respect to the sentence imposed.  See Plea Agreement ¶ 8, at 3.

On November 22, 2011, the United States Probation Office ("USPO") disclosed the PSR on Ochoa-Arrieta.  The USPO calculates a base offense level of 8, pursuant to U.S.S.G. § 2L1.2(a). See PSR ¶ 11, at 3.  It adds an 8-level enhancement, pursuant to U.S.S.G. § 2L1.2(b)(1)(C), because Ochoa-Arrieta was previously deported after a conviction for an aggravated felony.  See PSR ¶ 12, at 3.  The PSR applies a 3-level reduction, pursuant to U.S.S.G. § 3E1.1, for acceptance of responsibility.  See PSR ¶ 17, at 4.  Additionally, pursuant to the Plea Agreement, the PSR applies a 1-level downward departure.  See PSR ¶ 19, at 4.  Accordingly, Ochoa-Arrieta has a total offense level of 12.  See PSR ¶ 19, at 4.  The USPO calculates that Ochoa-Arrieta has a criminal history category of IV, based on 7 criminal history points.  See PSR ¶ 25, at 7.  A total offense level of 12 and a criminal history category of IV establish a guideline sentencing range of 21 to 27 months. See PSR at 11.  Although the USPO does not reduce Ochoa-Arrieta's offense level based on his cultural assimilation, it notes that, pursuant to application note 8 to U.S.S.G. § 2L1.2, a downward departure may be warranted.  See PSR ¶¶ 49-51, at 12.

-3-

In his Sentencing Memorandum, Ochoa-Arrieta argues that 18 U.S.C. § 3553(a) requires that a district court impose a sentence "sufficient, but not greater than necessary." Sentencing Memorandum at 2. He asserts that a sentence below the recommended guideline range would be sufficient, but not greater than necessary to satisfy the purposes of sentencing. See Sentencing Memorandum at 2. With respect to a departure based on cultural assimilation, Ochoa-Arrieta asserts that his cultural ties to the United States are very strong. See Sentencing Memorandum at 6. He further asserts: (i) that he was brought to the United States at the age of 3; (ii) that he grew up in Oklahoma -- where he attended public school, worked, and learned English; (iii) that he has two half-siblings who live and work in the United States; and (iv) that he has spent over 20 years living in the United States. See Sentencing Memorandum at 6. He argues that he considers himself an American, in spite of the fact that his mother never applied for his permanent resident status, and that he is married to a United States citizen as well as the father of two United States citizens. See Sentencing Memorandum at 6. He contends that his primary motivation for re-entering the United States was family re-unification, and to provide financial and emotional support to his family. See Sentencing Memorandum at 7. Ochoa-Arrieta asserts that his convictions stem from the depression with which he was diagnosed as a teenager and that, since 2006, he has not had any additional contacts with law enforcement. See Sentencing Memorandum at 7-8.

On January 19, 2012, Plaintiff United States of America filed the United States' Response to Defendant's Sentencing Memorandum. See Doc. 24 ("Response"). The United States argues that the Court should deny Ochoa-Arrieta's request for a downward departure based on cultural assimilation, because he has not assimilated "into the life of a law-abiding United States citizen." Response at 2. The United States asserts that nothing about Ochoa-Arrieta's background is so extraordinary as to warrant a departure. See Response at 3. The United States emphasizes that

Ochoa-Arrieta has multiple felony and misdemeanor convictions and that he has been previously deported.  See Response at 3.  The United States further asserts that a variance from the advisory guideline range is not warranted.  See Response at 4.  It contends that a sentence below the advisory guideline range will not reflect the seriousness of Ochoa-Arrieta's offense or promote respect for the law.  See Response at 4-5.  The United States also argues that a sentence within the guideline range is the best way to avoid unwarranted sentencing disparities.  See Response at 5-6.

On January 25, 2012, the Court held a sentencing hearing.  At the hearing, the United States moved for a third level reduction in offense level, pursuant to U.S.S.G. § 3E1.1, for acceptance of responsibility.  See Transcript of Hearing at 2:16-24 (January 25, 2012)(Court, Wilson)("Tr.").[2]  The United States also moved for a 1-level downward departure pursuant to the Plea Agreement and the United States Attorney's fast-track program.  See Tr. at 3:3-9 (Court, Pflugrath, Wilson).  Ochoa-Arrieta then argued in support of a downward departure.  He stated that his case for cultural assimilation is a strong one, because: (i) he understands and communicates in English; (ii) he attended public schools in the United States; and (iii) he grew up in the heartland of Oklahoma.  See Tr. at 4:19-5:19 (Wilson).  Ochoa-Arrieta also emphasized that he has two children who are United States citizens, that his wife has filed an I-130, Petition for Alien Relative, with United States Citizenship and Immigration Services, and that, when he was previously deported, he spent nine months in custody attempting to fight the deportation order.  See Tr. at 5:20-6:12 (Wilson).  He asserted that all of his convictions stem from his teenage years when he was struggling with depression.  See Tr. at 6:12-7:8 (Wilson).  Ochoa-Arrieta contended that he has worked in the United States, contributing to the communities in which he has lived, and that the Court should

---

[2]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

depart downward to reflect his ties to the United States.  See Tr. at 7:22-8:5 (Wilson).  The United States responded that since, October 2004, Ochoa-Arrieta has been facing criminal charges, has been in jail, or has been under a deportation order.  See Tr. at 8:9-12 (Pflugrath).  It asserted that he has not acted as if he was a law-abiding United States citizen and emphasized that, for the last four years, Ochoa-Arrieta lived in Mexico, which gives him contacts in Mexico.  See Tr. 8:15-17 (Pflugrath).  The United States also contended that, because Ochoa-Arrieta began violating the law at an early age, he is not permitted to seek citizenship.  See Tr. at 8:19-22 (Pflugrath).  The Court then granted a 2-level downward departure, pursuant to U.S.S.G. § 2L1.2.  See Tr. at 10:6-10 (Court).

Ochoa-Arrieta then argued in favor of a variance.  He asserted that he has been in custody for 7 months and that he understands the seriousness of his offense.  See Tr. at 10:17-20 (Wilson).  Ochoa-Arrieta contended that he is in a difficult position, because of his family ties to the United States, but stated that he understands that he cannot return to the United States.  See Tr. at 10:20-24 (Wilson).  He represented that he believes he can use his English skills to obtain success in Mexico and emphasized that his love for his family was his motivation to return to the United States.  See Tr. at 11:5-17 (Wilson).  He asked for a time-served sentence and, in support of such a sentence, asserted that: (i) further punishment would not further any sentencing goals; (ii) he will be deported; (iii) he is unlikely to commit another crime; and (iv) it was a non-violent offense.  See Tr. at 12:1-15 (Wilson).  The United States opposed a variance and emphasized that Ochoa-Arrieta has not committed another criminal offense because he was removed to Mexico in 2007.  See Tr. at 13:14-24 (Pflugrath).

## ANALYSIS

The Court will depart downward 2 levels in recognition of Ochoa-Arrieta's cultural

assimilation.  The Court will also vary to a sentence of 13-months imprisonment.  The Court will

not sentence Ochoa-Arrieta to a time-served sentence, however, because, given his criminal history,

to vary below the sentence he received for his resisting an officer charge would not be consistent

with several of the factors in 18 U.S.C. § 3553(a).

## I.     THE COURT WILL GRANT A DOWNWARD DEPARTURE BASED ON CULTURAL ASSIMILATION.

The USPO and Ochoa-Arrieta assert that Ochoa-Arrieta is entitled to some downward

departure based on his cultural assimilation into the United States.  See PSR ¶¶ 49-51, at 12;

Sentencing Memorandum at 6-7.  The United States argues that he has not assimilated "into the life

of a law-abiding United States citizen" and that nothing about Ochoa-Arrieta's background is so

extraordinary as to warrant a departure.  Response at 2-3.  Application note 8 to U.S.S.G. § 2L1.2

states:

> There may be cases in which a downward departure may be appropriate on the basis
> of cultural assimilation. Such a departure should be considered only in cases where
> (A) the defendant formed cultural ties primarily with the United States from having
> resided continuously in the United States from childhood, (B) those cultural ties
> provided the primary motivation for the defendant's illegal reentry or continued
> presence in the United States, and (C) such a departure is not likely to increase the
> risk to the public from further crimes of the defendant.
>
> In determining whether such a departure is appropriate, the court should consider,
> among other things, (1) the age in childhood at which the defendant began residing
> continuously in the United States, (2) whether and for how long the defendant
> attended school in the United States, (3) the duration of the defendant's continued
> residence in the United States, (4) the duration of the defendant's presence outside
> the United States, (5) the nature and extent of the defendant's familial and cultural
> ties inside the United States, (6) the seriousness of the Defendant's criminal history,
> and (7) whether the defendant engaged in additional criminal activity after illegally
> reentering the United States.

U.S.S.G. § 2L1.2 cmt. n. 8.

Weighing these factors, the Court notes that Ochoa-Arrieta's mother brought him to the

United States at the age of three and that, although he has never become a citizen, Ochoa-Arrieta grew up in the United States -- attending public schools, living and working here.  See PSR ¶¶ 29, 31, 41-43, at 8, 10.  He spent eleven years in public school in Oklahoma and, before his deportation in 2007, had lived in the United States for approximately seventeen years.  See PSR ¶¶ 37, 50, at 10, 12.  His primary language is English.  See PSR ¶ 37, at 10.  While Ochoa-Arrieta spent the four years since his 2007 deportation in Mexico, he does not appear to have any close family ties to Mexico beyond his grandmother.  See PSR ¶¶ 29-31, at 7-8.  In contrast, his mother, step-father, wife, two half-siblings, and two children all reside within the United States.  See PSR ¶¶ 29, 32, at 8.  Ochoa-Arrieta's criminal history consists of: (i) possession or use of nitrate inhalants in 2005; (ii) knowingly concealing stolen property in 2005; (iii) driving a motor vehicle while under the influence of drugs in 2005; (iv) contributing to the delinquency of a minor in 2005; (v) resisting an officer in 2006; (vi) petit larceny in 2006; and (vii) possession of a controlled substance in 2006.  See PSR ¶ 51, at 12.  Ochoa-Arrieta's criminal history is not extensive, spanning for the most part a two-year period in which he struggled with depression.  See PSR ¶ 35, at 9.  The majority of Ochoa-Arrieta's offenses were non-violent and, while the Court is concerned about Ochoa-Arrieta's resisting-an-officer charge, it is the sole conviction involving the use of any force.  See PSR ¶ 23, at 6.  The only crime for which Ochoa-Arrieta has been convicted, since 2006, is the re-entry charge before the Court.  Furthermore, the primary motivation for Ochoa-Arrieta to return to the Untied States appears to have been family reunification, after the violence his family witnessed when they attempted to visit him in Mexico.  See PSR ¶ 33, at 8-9.  The Court believes that the weight of these factors counsels in favor of a 2-level downward departure based on Ochoa-Arrieta's cultural assimilation.  Ochoa-Arrieta was a small child when he was brought to the United States and attended public schools for a significant period of time.  See United States v. Hernandez-Del Villar,

-8-

786 F.Supp.2d 986, 989 (D.N.M. 2011)(Browning, J.)("[T]he Court does not generally grant downward departures unless defendants arrived when they were truly in their childhood.").  He has had a steady presence in the United States and does not appear to have numerous ties to Mexico. See United States v. Dehoyos-Banderas, No. 10-2674, 2011 WL 1336520, at *2 (D.N.M. Mar. 18, 2011)(Browning, J.)("The Court believes that this lack of a steady presence in the United States is the biggest problem for Dehoyos-Banderas' cultural assimilation motion.").  The Court find that Ochoa-Arrieta's circumstances fall into the category of defendants who are better positioned to receive a departure -- "defendants who came [to the United States] when they were two or three, spoke only English, were schooled in United States public schools and were as American as any United States citizen's children."  United States v. Almendares-Soto, No. 10-1922, 2010 WL 5476767, at *11 (D.N.M. Dec. 14, 2010)(Browning, J.).  Accordingly, the Court will depart downward 2 levels to a total offense level of 10.

## II.     THE COURT WILL VARY DOWNWARD TO A SENTENCE OF 13-MONTHS IMPRISONMENT.

Ochoa-Arrieta asks the Court for a time-served sentence.  The United States requests that the Court sentence Ochoa-Arrieta within the guideline imprisonment range.  The Court has reviewed the PSR's factual findings, and, there not being any objections to those findings, the Court adopts them as its own.  The Court has also reviewed the PSR's guidelines calculation, and with the exception of a 2-level downward departure for cultural assimilation, the Court adopts those calculations as its own as well.  The Court has considered the factors set forth in 18 U.S.C. § 3553(a).

Before any downward departure, the offense level is 13 and the criminal history category is IV, establishing a guideline imprisonment range of 24 to 30 months.  Pursuant to rule 11(c)(1)(C)

and U.S.S.G. § 5K3.1, the Court accepts the Plea Agreement, which stipulates to an offense level of 12, as the Court is satisfied that the agreed-on offense departs for justifiable reasons.  The Plea Agreement is pursuant to a non-standard fast track plea agreement.  In section 401(m)(2)(b) of the PROTECT Act of 2003, Pub. L. No. 109-21, § 401(m)(2)(B), 117 Stat. 650, 675, Congress approved of early disposition or fast-track programs if certain conditions are met.  The Court believes that these conditions are met in this case, and this departure is in the lower part of the range of departures that Congress has allowed.  The Court accepts the Plea Agreement, and the Court's sentence will be consistent with it.  An offense level of 12 and a criminal history category of IV establishes a guideline imprisonment range of 21 to 27 months.  Pursuant to U.S.S.G. § 2L1.2 application note 8, the Court finds that Ochoa-Arrieta has formed significant cultural ties with the United States and, based upon its findings, reduced his total offense level 2 levels.  An offense level of 10 and a criminal history category of IV establishes a guideline imprisonment range of 15 to 21 months.

The Court notes that Ochoa-Arrieta illegally reentered the United States after having been previously deported following a conviction for an aggravated felony.  The Court has, as the record will reflect, considered the guidelines, but in arriving at its sentence, has taken account not only of the guidelines, but of other sentencing goals.  Specifically, the Court has considered the guideline sentencing range established for the applicable category of offense committed by the applicable category of defendant.  After carefully considering Ochoa-Arrieta's circumstances, the Court concludes that the punishment set forth in the guidelines is not appropriate for this offense.  The Court then considered the kinds of sentences and ranges established in the guidelines and concludes that some variance is appropriate.  While the Court recognizes that some variance may be appropriate, the Court does not believe that, after the downward departure, it should vary much.  The Court finds that the depression from which Ochoa-Arrieta suffers, his deportation, his lack of ties

to Mexico, his work history, and the letters from his family explaining the contributions to society he has made in the United States counsel in favor of a variance. The Court would be inclined to vary 2 levels to the equivalent of a total offense level of 8, but for the resisting arrest charge and his criminal history. The Court believes that varying below the sentence he received for that conviction -- 12-months incarceration -- would be inappropriate, and would not adequately reflect several of the factors in 18 U.S.C. § 3553(a), particularly the seriousness of the offense, respect for the law, protecting the public, and adequate deterrence. Accordingly, the Court will vary the equivalent of 1 level, which would establish a guideline range of 12 to 18 months, and sentence Ochoa-Arrieta to 13-months imprisonment. The Court finds that this sentence continues to reflect the seriousness of the offense, and better promotes respect for the law and provides just punishment. This sentence affords adequate deterrence, both generally and specifically, protects the public, and manages to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct.

The Court finds that this sentence fully and effectively reflects each of the factors embodied in 18 U.S.C. § 3553(a). While the Court's task, as a district court, is not to arrive at a reasonable sentence -- it is to come up with one that reflects the factors in 18 U.S.C. § 3553(a), see United States v. Conlan, 500 F.3d 1167, 1169 (10th Cir. 2007)("[A] district court's job is not to impose a reasonable sentence. Rather, a district court's mandate is to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of section 3553(a)(2)." (citation omitted)) -- the Court believes this sentence is reasonable, more reasonable than the applicable guidelines sentence, and better reflects the factors in 18 U.S.C. § 3553(a). Finally, the Court believes that this sentence is sufficient without being greater than necessary to comply with the purposes of punishment Congress set forth in the Sentencing Reform Act of 1984, Pub. L. No. 98-473, 98 Stat. 1987

(codified as amended in scattered sections of 18 U.S.C.).  The Court sentences Ochoa-Arrieta to 13-months imprisonment.

　　　　**IT IS ORDERED** that the requests in the Defendant's Sentencing Memorandum and Motion for a Downward Departure and/or a Variance, filed January 12, 2012 (Doc. 23), are granted in part and denied in part.  The Court will depart downward based on Ochoa-Arrieta's cultural assimilation and will vary downward, although not to a time-served sentence.  The Court will sentence Ochoa-Arrieta to 13-months imprisonment

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Kenneth J. Gonzales
　United States Attorney
Shammara Henderson
　　Assistant United States Attorney
United States Attorney's Office
Las Cruces, New Mexico

　　　　*Attorneys for the Plaintiff*

Benjamin C. Wilson
Albuquerque, New Mexico

　　　　*Attorneys for the Defendant*

-12-